## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

AKIRA EDMONDS,                          )
                                        )
          Plaintiff,                    )
                                        )
     vs.                                )          Case No. 4:20-CV-946 SNLJ
                                        )
CORIZON MEDICAL SERVICES, et al.,       )
                                        )
          Defendants.                   )

## MEMORANDUM AND ORDER

This matter is before the Court upon the motion of self-represented plaintiff Akira

Edmonds for leave to commence this action without prepayment of the required filing fee. Having

reviewed the motion and the financial information submitted in support, the Court will grant the

motion, and assess an initial partial filing fee of $52.09. *See* 28 U.S.C. § 1915(b)(1). Furthermore,

after reviewing the complaint, the Court will direct plaintiff to file an amended complaint on the

court-provided form and in compliance with the instructions set forth herein.

### Initial Partial Filing Fee

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action *in forma pauperis* is

required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her

prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial

partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's

account, or (2) the average monthly balance in the prisoner's account for the prior six-month

period. After payment of the initial partial filing fee, the prisoner is required to make monthly

payments of 20 percent of the preceding month's income credited to the prisoner's account. 28

U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly

payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10, until the filing fee is fully paid. *Id.*

In support of the instant motion, plaintiff submitted an inmate account statement showing average monthly deposits of $260.46. The Court finds that plaintiff has insufficient funds in his prison account to pay the entire fee and will therefore assess an initial partial filing fee of $52.09, which is twenty percent of plaintiff's average monthly deposit.

## Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed *in forma pauperis* if it is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. To state a claim for relief, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Id.* at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Id.* at 679.

When reviewing a complaint filed by a self-represented person under 28 U.S.C. § 1915, the Court accepts the well-pleaded facts as true, *White v. Clark*, 750 F.2d 721, 722 (8th Cir. 1984), and it liberally construes the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits the claim to be considered within the proper legal framework. *Solomon v. Petray*,

-2-

795 F.3d 777, 787 (8th Cir. 2015). However, even self-represented plaintiffs are required to

allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623

F.2d 1282, 1286 (8th Cir. 1980); *see also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004)

(refusing to supply additional facts or to construct a legal theory for the self-represented

plaintiff).

## The Complaint

Plaintiff is currently an inmate at Northeast Correctional Center ("NECC") in Bowling

Green, Missouri. Prior to his transfer to NECC in August 2019, plaintiff was incarcerated at

South Central Correctional Center ("SCCC") in Licking, Missouri. ECF No. 1 ¶ 36. Plaintiff

brings this action under 42 U.S.C. § 1983, alleging violations of his civil rights against seventeen

defendants: (1) Corizon Medical Services; (2) D. Meyer (Corizon Director); (3) J. Cofield

(Corizon Director);[1] (4) T. Bredeman (Corizon Associate Director); (5) John Doe (doctor); (6) D.

Wade (nurse); (7) A. Renee (nurse); (8) A. Chada (doctor); (9) Unknown Smotherson (nurse

practitioner); (10) K. Barton (nurse); (11) Unknown Stevenson (doctor); (12) T. Crouch (nurse

practitioner); (13) P. Allen (nurse); (14) R. Oakley (nurse); (15) A. Precythe (Director of the

Missouri Department of Corrections ("MDOC")); (16) M. Buckner (SCCC warden); and (17) D.

Redington (NECC warden). *Id.* ¶¶ 9-25. Plaintiff brings his claims against the sixteen

individual defendants in both their individual and official capacities. *Id.*

Plaintiff alleges that defendants have violated his Eighth Amendment right to be free of

cruel and unusual punishment by being deliberately indifferent in their medical treatment of a

hernia in his groin. According to plaintiff, he started experiencing pain in his groin area in May

2019 while he was incarcerated at SCCC. *Id.* ¶ 26. That same month, "Nurse Becky" diagnosed

---

[1] Plaintiff spells this defendant's name as "J. Cofeld" in the caption of his complaint, but as "J. Cofield" in the
details and allegations of the complaint. ECF No. 1 at 1 & ¶¶ 11, 50-57, 65-67. The Court will refer to this
defendant as "J. Cofield" and direct the Clerk of Court to update the docket sheet to reflect this spelling.

plaintiff with a hernia but provided no medical treatment. *Id.* ¶ 27. In June 2019, plaintiff saw Nurse Becky again after he declared a medical emergency due to severe groin pain. Nurse Becky provided no medical treatment except to instruct plaintiff to "lay down" so that the hernia pain would stop. When plaintiff questioned Nurse Becky about hernia surgery, she told him that "surgery would make the hernia worse." *Id.* ¶ 28-30. That same month, plaintiff was also seen by "Nurse Jill," who "didn't notice plaintiff's hernia" but "put plaintiff in to see the Doctor." *Id.* ¶ 31. In July 2019, plaintiff was seen by defendant nurse practitioner Smotherson who diagnosed plaintiff with a hernia and said she would order plaintiff a truss.[2] *Id.* ¶ 32. A few weeks later, plaintiff was told by "Nurse Marley" that "someone in Jefferson City" denied the request for a truss for plaintiff. *Id.* ¶ 33. In late August 2019, plaintiff saw defendant Dr. Chada about his hernia; however, plaintiff states that Dr. Chada never actually examined him. Dr. Chada laughed at plaintiff and called him a "fool" when plaintiff asked him about being recommended for hernia surgery. Dr. Chada told plaintiff "there was nothing that could be done about the hernia other than to rest." *Id.* ¶ 34-35.

On the day after his discussion with Dr. Chada, August 27, 2019, plaintiff was transferred to NECC. The next day, plaintiff saw "Nurse Griffin" and defendant nurse practitioner Crouch about his hernia. Crouch prescribed a truss and ibuprofen. *Id.* ¶ 36-38. When plaintiff questioned Crouch about hernia surgery, Crouch said that she would not recommend surgery "because it is extremely difficult to get approved." Crouch advised plaintiff "to get his family involved" and said that "it might make a difference." *Id.* ¶ 40. In October 2019, plaintiff saw "Nurse Kelly" due to severe hernia pain, informing her that the prescribed ibuprofen was not

---

[2] According to the Mayo Clinic website, a "hernia truss is a supportive undergarment for men designed to keep the protruding tissue in place and relieve discomfort … [It] can help you feel more comfortable temporarily, but it doesn't treat the hernia." *Hernia Truss: Can it help an inguinal hernia?*, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/inguinal-hernia/expert-answers/hernia-truss/faq-20058111 (last visited Sept. 21, 2020).

- 4 -

helping with the pain. Nurse Kelly said she would "put plaintiff in to see a Doctor." *Id.* ¶¶ 41-42. Later that month, plaintiff saw defendant nurse practitioner Crouch again. Plaintiff complained about severe pain and lack of relief from the ibuprofen. Crouch told plaintiff that she could "generally 'monitor' plaintiff's hernia, [but] other than that, there was nothing else she could do." *Id.* ¶¶ 43-45. On November 22, 2019, plaintiff complained to "Nurse Kelly" that his "hernia belt"[3] was broken and causing jock itch. Plaintiff was immediately given cream for the itch and three days later he received a new hernia belt. Plaintiff was told at that time, by an unnamed person, that he "would not receive surgery to fix his hernia because Jefferson City simply wouldn't approve it." *Id.* ¶¶ 46-48.

Plaintiff divides his complaint into three Counts. All Counts are brought under 42 U.S.C. § 1983 for cruel and unusual punishment arising out of deliberately indifferent medical care. Count I is brought against eleven of the defendants: Corizon, Meyer, Cofield, Bredeman, Doe, Renee, Chada, Smotherson, Barton, Precythe, and Buckner. ECF No. 1 at 8. Plaintiff alleges these defendants failed to inspect his hernia at regular intervals to check for infection or worsening condition; failed to provide a truss for more than 120 days after diagnosis; failed to minimize hernia pain by providing restrictions on lay-in, weight-lifting, exercise, and standing; failed to consult a physician immediately upon complaints of increased pain; and failed to request hernia surgery for plaintiff despite it being the only cure for his condition. *Id.* ¶¶ 50-54. As a result of these failures, plaintiff asserts that his hernia has become worse and he has suffered severe pain. *Id.* ¶ 55.

Count II is brought against twelve defendants: Corizon, Meyer, Cofield, Bredeman, Doe, Wade, Stevenson, Crouch, Allen, Oakley, Precythe, and Redington. *Id.* at 11. According to

---

[3] The Court assumes that "hernia belt" is another name for the truss provided to plaintiff to help provide relief for his hernia pain.

plaintiff, defendant Crouch told him that defendants Wade, Allen, and Oakley, "along with the 'powers that be' in Jefferson City (Defendants Meyer, Cofield, Dr. John Doe, and Bredeman" told Crouch that hernia surgery would not be approved and informed Crouch to simply monitor the hernia. Crouch did increase plaintiff's dosage of ibuprofen for the pain though. *Id.* ¶ 65.

Count III is brought against defendant Corizon Medical Services only. *Id.* at 13. Plaintiff alleges that Corizon, acting under color of state law, maintains unconstitutional customs, policies, and practices including: failing to provide appropriate medical treatment to inmates; failing to establish polices to insure prescribed medical treatment is delivered; failing to resolve inmates' medical conditions; failing to send inmates out for surgery for emergency medical conditions; failing to provide appropriate diagnostic testing for inmates; failing to establish a policy of physician review of inmates' medical conditions; failing to approve recommended treatment procedures; and failing to discipline employees for deliberately indifferent medical care. *Id.* ¶¶ 70-71. Plaintiff asserts that Corizon's customs and policies are responsible for his denial of constitutionally adequate medical care.

For relief, plaintiff seeks actual damages, punitive damages, attorneys' fees and costs. ECF No. 1 at 10-11, 13-14.

## Discussion

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, which was designed to provide a "broad remedy for violations of federally protected civil rights." *Monell v. Dep't of Soc. Servs*, 436 U.S. 658, 685 (1978). One such federally protected right is the Eighth Amendment's prohibition on cruel and unusual punishment, which protects prisoners from deliberate indifference to serious medical needs. *Luckert v. Dodge Cty.*, 684 F.3d 808, 817 (8th Cir. 2012).

"Liability under § 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990); *see also*

- 6 -

*Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (to be cognizable under § 1983, a claim must allege that the defendant was personally involved in or directly responsible for the incidents that deprived the plaintiff of his constitutional rights). In other words, "[g]overnment officials are personally liable only for their own misconduct." *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015). To that end, a plaintiff must allege facts connecting the defendant to the challenged action. *See Bitzan v. Bartruff*, 916 F.3d 716, 717 (8th Cir. 2019). It is necessary for plaintiff to provide the role of each named defendant in the case, in order that each specific defendant can know what he or she is accused of doing. *See Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (stating that the essential function of a complaint "is to give the opposing party fair notice of the nature and basis or grounds for a claim") (internal quotations and citation omitted).

Here, plaintiff describes the defendants by providing their last names (and in most cases a first initial), and their professions or titles. *See* ECF No. 1 ¶¶ 9-25. However, in plaintiff's detailed factual allegations concerning the medical treatment he received at SCCC and NECC, he describes actions taken by many nurses by using their first names only. *See* ECF No. 1 ¶¶ 27, 29-30 ("Nurse Becky"); ¶ 31 ("Nurse Jill"); ¶ 33 ("Nurse Marley"); ¶ 37 ("Nurse Griffin"); ¶ 41-42, 46 ("Nurse Kelly"). It is unclear how, and if, these named nurses correspond to named defendants in this matter.

As to factual allegations specifically referencing named defendants in this matter, plaintiff names only defendants Dr. Chada, Smotherson, and Crouch in relation to the medical care he has received. Plaintiff mentions defendant nurses Wade, Allen, and Oakley only once, as having told Crouch that plaintiff's hernia surgery would not be approved. *See* ECF No. 1 ¶ 65. It is unclear how these nurses, or any of the other medical defendants against which there are no allegations asserted (nurse Renee, nurse Barton, and Dr. Stevenson), are personally responsible for plaintiff

- 7 -

receiving inadequate medical care. Also, due to the lack of information concerning each defendant's interactions with plaintiff, it is unclear if plaintiff's separation of claims into Count I and II is intended as a separation of defendants associated with SCCC versus NECC.

In addition, as to named defendant wardens Buckner and Redington, it is not enough for plaintiff to simply allege that these defendants oversaw the SCCC and NCCC facilities. "[A] warden's general responsibility for supervising the operations of a prison is insufficient to establish personal involvement." *Reynolds v. Dormire,* 636 F.3d 976, 981 (8th Cir. 2011) (quoting *Ouzts v. Cummins,* 825 F.2d 1276, 1277 (8th Cir. 1987) (per curiam)). As to defendant Dr. John Doe, generally, it is impermissible to name fictitious parties as defendants. *See Estate of Rosenberg by Rosenberg v. Crandell,* 56 F. 3d 35, 37 (8th Cir. 1995). An action may only proceed against an unknown individual if the complaint makes "allegations specific enough to permit the identity of the party to be ascertained after reasonable discovery." *Id.* (citing *Munz v. Parr,* 758 F.2d 1254 (8th Cir. 1985)).

Plaintiff fails to allege how each defendant was personally involved in or directly responsible for any allegedly unconstitutional conduct. Because plaintiff is self-represented and has presented serious allegations to the Court, he will be allowed to amend his complaint in accordance with the instructions set forth below.

Plaintiff is advised that the amended complaint will completely replace the original complaint, and so it must include all claims plaintiff wishes to bring. *E.g., In re Wireless Telephone Federal Cost Recovery Fees Litigation,* 396 F.3d 922, 928 (8th Cir. 2005). Any claims from the original complaint that are not included in the amended complaint will be deemed abandoned and will not be considered. *Id.* Plaintiff must submit the amended complaint on the court-provided form, and the amended complaint must comply with the Federal Rules of Civil Procedure.

In the "Caption" section of the amended complaint, plaintiff must state the first and last name, to the extent he knows it, of the defendant or defendants he wants to sue. Plaintiff should also indicate whether he intends to sue the defendant in his or her individual capacity, official capacity, or both. Plaintiff should avoid naming anyone as a defendant unless that person is directly related to his claim.

In the "Statement of Claim" section, plaintiff should begin by writing the defendant's name. In separate, numbered paragraphs under that name, plaintiff should write the specific facts supporting his claim or claims against the defendant. If plaintiff is suing more than one defendant, he should proceed in the same manner with each one, separately writing each individual defendant's name and, under that name, in numbered paragraphs, the factual allegations supporting his claim or claims against that defendant. Plaintiff should only include claims that arise out of the same transaction or occurrence, or simply put, claims that are related to each other. *See* Fed. R. Civ. P. 20(a)(2). Alternatively, plaintiff may choose a single defendant, and set forth as many claims as he has against him or her. *See* Fed. R. Civ. P. 18(a). Plaintiff's failure to make specific factual allegations against any defendant will result in that defendant's dismissal.

If plaintiff is suing a defendant in an individual capacity, he is required to allege facts demonstrating the personal responsibility of the defendant for harming him. *Madewell*, 909 F.2d at 1208. When suing multiple defendants, it is important that plaintiff establish the responsibility of each separate defendant for harming him. That is, for each defendant, plaintiff must allege facts showing how that particular defendant's acts or omissions violated his constitutional rights. It is not enough for plaintiff to make general allegations against all the defendants as a group.

After receiving the amended complaint, the Court will review it pursuant to 28 U.S.C. § 1915. If plaintiff fails to file an amended complaint on a court-provided form within thirty (30)

days in accordance with the instructions set forth herein, the Court will dismiss this action without prejudice and without further notice to plaintiff.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to proceed *in forma pauperis* [ECF No. 2] is **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff shall pay an initial filing fee of $52.09 within **thirty (30) days** of the date of this Order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) that the remittance is for an original proceeding.

**IT IS FURTHER** that, within **thirty (30) days** after the date of this Order, plaintiff shall file an amended complaint in accordance with the instructions set forth herein.

**IT IS FURTHER ORDERED** that the Clerk of Court shall mail to plaintiff a blank Prisoner Civil Rights Complaint form.

**IT IS FURTHER ORDERED** that the Clerk of Court shall change the docket sheet spelling of defendant "J. Cofeld" to "J. Cofield."

**If plaintiff fails to timely file an amended complaint in compliance with this Order, the Court will dismiss this action without prejudice and without further notice.**

Dated this **24**ᵗʰ day of September, 2020.

STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE