UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| AKIRA EDMONDS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:20-CV-946 SNLJ |
| | ) |
| CORIZON MEDICAL SERVICES, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court upon the amended complaint of self-represented plaintiff Akira Edmonds. ECF No. 6. The Court previously granted plaintiff *in forma pauperis* status and reviewed his § 1983 complaint under 28 U.S.C. § 1915. ECF No. 5. Based on that review, the Court directed plaintiff to file an amended complaint on a Court-provided form and in compliance with the Court's instructions. The Court warned plaintiff that his amended complaint would also be reviewed under § 1915. After review of the amended complaint and for the reasons discussed below, the Court will dismiss this matter for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

### Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed *in forma pauperis* if it is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. To state a claim for relief, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Id.* at 679. "A claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Id.* at 679.

When reviewing a complaint filed by a self-represented person under 28 U.S.C. § 1915, the Court accepts the well-pleaded facts as true, *White v. Clark*, 750 F.2d 721, 722 (8th Cir. 1984), and it liberally construes the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits the claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even self-represented plaintiffs are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980); *see also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (refusing to supply additional facts or to construct a legal theory for the self-represented plaintiff).

**Background**

Plaintiff is currently an inmate at Northeast Correctional Center ("NECC") in Bowling Green, Missouri. Prior to his transfer to NECC in August 2019, plaintiff was incarcerated at South Central Correctional Center ("SCCC") in Licking, Missouri. ECF No. 1 ¶ 36. Plaintiff's initial complaint sought relief under 42 U.S.C. § 1983 against seventeen defendants, alleging claims of violations of the Eighth Amendment at both SCCC and NECC. *Id.* at ¶¶ 9-25. Plaintiff asserted that he had received deliberately indifferent medical care and treatment of a hernia in his groin.

The Court reviewed plaintiff's complaint under 28 U.S.C. § 1915(e)(2) and found that plaintiff failed to specify factual allegations against each of the seventeen named defendants such that the Court could examine whether each of them was personally involved in or directly responsible for any allegedly unconstitutional conduct. *See* ECF No. 5 at 6-8. Because plaintiff is self-represented, the Court directed him to file an amended complaint to attempt to cure these pleading deficiencies.

## The Amended Complaint

Plaintiff's amended complaint, brought for deliberately indifferent medical care under 42 U.S.C. § 1983, names just seven defendants: (1) Ashok Chadda[1] (Corizon medical doctor); (2) Michelle Buckner (SCCC warden); (3) T. Bredeman (Corizon Associate Regional Medical Director); (4) Dana Meyer (Corizon Director); (5) Dr. Unknown Lovelace (Missouri Department of Corrections ("MDOC") doctor); (6) Dr. Jouel Stevenson (Corizon doctor); and (7) Tamra Crouch (Corizon nurse practitioner). ECF No. 6 at 2, 4-5. Plaintiff brings his claims against Dr. Chadda and Buckner in both their individual and official capacities. *Id.* at 2, 4. However, he does not specify capacity for the other five defendants. *Id.* at 5.

According to plaintiff, he started experiencing pain in his groin area in May 2019 while incarcerated at SCCC. *Id.* at 4 ¶ 1. On July 23, 2019, a nurse practitioner at SCCC diagnosed plaintiff with a hernia, ordered a hernia truss,[2] and "put [plaintiff] in" to see a doctor. *Id.* at 4 ¶ 2. However, soon after the diagnosis, plaintiff was told that the request for a truss was denied "by the 'powers that be,' in Jefferson City." *Id.* at 4 ¶ 3.

---

[1] Plaintiff refers to this defendant with different spellings of his last name: "Chadda" and "Chada." *See* ECF No. 6 at 1, 2; *but see id.* at 6 ¶ 6-7, 8-10 ¶ 10-13. The Court will use the spelling provided in the caption and list of defendants: "Chadda."

[2] According to the Mayo Clinic website, a "hernia truss is a supportive undergarment for men designed to keep the protruding tissue in place and relieve discomfort." *Hernia Truss: Can it help an inguinal hernia?*, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/inguinal-hernia/expert-answers/hernia-truss/faq-20058111 (last visited Dec. 21, 2020).

On August 26, plaintiff was seen by Dr. Chadda at SCCC. Plaintiff alleges that Dr. Chadda did not perform any form of examination and that Dr. Chadda laughed at him when plaintiff said that he needed hernia surgery. Dr. Chadda told plaintiff he was a "fool" if he thought he would get hernia surgery; Dr. Chadda said that he would not recommend such surgery until "the hernia could no longer be pushed back in." *Id.* at 6 ¶ 6. When plaintiff asked for pain medication, Dr. Chadda told plaintiff that "there was nothing that could be done for the hernia other than to rest." *Id.* at 6, 8 ¶ 7.

On the following day, August 27, plaintiff was transferred to NECC. *Id.* at 10 ¶ 14. Less than a month later, on September 11, plaintiff was seen by NECC nurse practitioner Tamra Crouch about his hernia. Crouch prescribed a truss and ibuprofen for pain. *Id.* at 10 ¶ 15. When asked about hernia surgery, Crouch told plaintiff that she would not recommend it because it is "extremely difficult to get approved." *Id.* at 10, 12 ¶ 16. Crouch denied plaintiff a lay-in restriction on how much weight he could lift or on his ability to work. *Id.* In October 2019, plaintiff was "put in" to see a doctor due to severe hernia pain. *Id.* at 12 ¶ 17. Later in the month, plaintiff saw Crouch a second time. *Id.* at 12 ¶ 18. Crouch told plaintiff that she would not "put in" for him to see the doctor again, that she could only "generally monitor the hernia," and she denied his request for a hernia surgery recommendation again. *Id.* at 12 ¶¶ 18-20.

Over the next few months, plaintiff had several more visits to medical about his hernia and pain until he saw Dr. Jouel Stevenson in July 2020. *Id.* at 12 ¶ 21. Plaintiff complained that the truss and ibuprofen were not providing sufficient relief of the hernia pain. Dr. Stevenson denied plaintiff's request for surgery, stating that the truss could "hold the hernia in," but she did increase his amount of ibuprofen for pain. *Id.* at 12, 14 ¶ 23.

Plaintiff filed his initial complaint in this matter in late July 2020 and a few weeks later, plaintiff saw Dr. Doerhoff through video conferencing about his hernia. Dr. Doerhoff agreed

that plaintiff needed hernia surgery. On August 20, 2020, Dr. Stevenson told plaintiff she would refer him for surgery. *Id.* at 14 ¶¶ 24-25.

Although plaintiff has now been recommended for hernia surgery, he still alleges that medical defendants violated the Eighth Amendment when they exhibited cruel and unusual punishment in their deliberate indifference to his serious medical needs. Plaintiff asserts that Dr. Chadda was deliberately indifferent in his failure to perform an examination of plaintiff's hernia in August 2019 as needed to assess proper medical treatment; failure to provide pain medication resulting in "more than 120 day[s]" of severe pain for plaintiff; failure to order or resubmit a request for a truss to provide some comfort and pain relief; and failure to order or request hernia surgery for plaintiff. *Id.* at 8, 10 ¶¶ 10-13. Plaintiff further asserts that nurse practitioner Crouch was deliberately indifferent in her failure to request hernia surgery for plaintiff resulting in prolonged pain and growth of hernia to possibly "life-threatening;" failure to put plaintiff in to see a doctor; failure to provide adequate pain management; and failure to provide a lay-in restriction. *Id.* at 14 ¶¶ 26-28. As for defendant Dr. Stevenson, plaintiff claims she was deliberately indifferent in her failure to request hernia surgery for him until "the hernia could not be pushed in, and stay in;" failure to provide pain medication other than ibuprofen; and failure to "follow policies and procedures for recommending plaintiff for hernia surgery." *Id.* at 16 ¶¶ 29-31.

Finally, plaintiff also asserts that the non-medical defendants are responsible for his deliberately indifferent medical care. In August 2019, about a month after his hernia was diagnosed, plaintiff wrote to SCCC warden defendant Buckner complaining about the inadequate medical care he was receiving. *Id.* at 6 ¶ 5; ECF No. 6-1. Plaintiff informed Buckner that he was in severe pain and that he had been denied a truss and surgery. Plaintiff never received a response to the letter. ECF No. 6 at 19. Plaintiff alleges that Buckner's failure to ensure that he

was receiving adequate medical care after she was informed of his condition and situation in this letter, demonstrates deliberate indifference. *Id.* at 8 ¶ 9.

Plaintiff states that he "can only assume" that the "powers that be" in Jefferson City, who denied the truss request in July 2019, are defendant "Dana Meyer, T. Bredeman, and[/]or Dr. Lovelace." *Id.* at 6 ¶ 4. Plaintiff has been unable to learn the name of the actual person or persons who denied the July 2019 truss request. Plaintiff alleges this denial of truss constitutes deliberately indifferent medical care because it caused him to suffer severe pain and discomfort "for more than 120 days." *Id.* at 8 ¶ 8.

For relief, plaintiff seeks compensatory and punitive damages. *Id.* at 17.

## Discussion

Plaintiff alleges that defendants have violated his Eighth Amendment right to be free of cruel and unusual punishment by providing deliberately indifferent medical care. Plaintiff's was diagnosed with an inguinal hernia in July 2019. He was prescribed a truss for hernia support and ibuprofen for pain in September 2019. His repeated requests for hernia surgery were denied, as the hernia could still be pushed back in. In July 2020, the amount of ibuprofen was increased and in August 2020, plaintiff was referred for hernia surgery. Liberally construing the allegations of the amended complaint, the Court finds that the facts provided do not state a claim for deliberately indifferent medical care in violation of the Eighth Amendment.

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, which was designed to provide a "broad remedy for violations of federally protected civil rights." *Monell v. Dep't of Soc. Servs*, 436 U.S. 658, 685 (1978). One such federally protected right is the Eighth Amendment's prohibition on cruel and unusual punishment, which protects prisoners from deliberate indifference to serious medical needs. *Luckert v. Dodge Cty.*, 684 F.3d 808, 817 (8th Cir. 2012). To prevail on a deliberate indifference claim, a prisoner plaintiff must demonstrate that he

suffered from an objectively serious medical need, and that defendants actually knew of and disregarded that need. *Roberts v. Kopel*, 917 F.3d 1039, 1042 (8th Cir. 2019); *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). A "serious medical need" is "one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Holden v. Hirner*, 663 F.3d 336, 342 (8th Cir. 2011) (quoted case omitted).

"[D]eliberate indifference requires a highly culpable state of mind approaching actual intent." *Kulkay v. Roy*, 847 F.3d 637, 643 (8th Cir. 2017) (quoted case omitted). An inmate must demonstrate that a prison health care provider's actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Jackson v. Buckman*, 756 F.3d 1060, 1066 (8th Cir. 2014) (quoted case omitted). Allegations of mere negligence in giving or failing to supply medical treatment will not suffice. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Nor will a prisoner's "mere disagreement with treatment decisions" support a claim of deliberate indifference. *Jones v. Minn. Dep't of Corr.*, 512 F.3d 478, 482 (8th Cir. 2008).

Deliberate indifference may also be demonstrated by prison officials who intentionally deny or delay access to medical care. *Estelle*, 429 U.S. at 104-05. When a delay in treatment is alleged to have violated an inmate's constitutional rights, a court measures the objective severity of the deprivation "by reference to the *effect* of the delay in treatment." *Jackson v. Riebold*, 815 F.3d 1114, 1119 (8th Cir. 2016) (internal quotation marks omitted) (quoting *Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir. 2005)). To support a claim based on a delay in treatment, a plaintiff must present "verifying medical evidence" showing that the delay in treatment had detrimental effects. *Id.* at 1119-20; *see also Holden*, 663 F.3d at 342 ("[a] prisoner alleging a delay in treatment must present verifying medical evidence that . . . [the] delays adversely affected his prognosis.").

Here, plaintiff alleges that medical defendants exhibited deliberate indifference in the failure to perform an examination of plaintiff's hernia in August 2019; failure to provide a truss for more than 120 days after diagnosis; failure to provide pain medication for more than 120 days after diagnosis; failure to provide ongoing adequate pain management, including medication other than ibuprofen; failure to minimize hernia pain by providing lay-in restrictions; and failure to request hernia surgery in compliance with policies and procedures for doing so. Plaintiff asserts that these failures caused worsening of his hernia and severe pain.

Although plaintiff complains that he was not prescribed a truss and ibuprofen at his visit with Dr. Chadda in August 2019, this was his first visit with a doctor following the July 2019 hernia diagnosis by a nurse practitioner. At the time, Dr. Chadda said that he would not recommend surgery until "the hernia could no longer be pushed back in." ECF No. 6 ¶ 6. This comment indicates that Dr. Chadda performed some kind of examination at that time and that he based his treatment plan on the fact that plaintiff's hernia could still be pushed back in. His actions do not demonstrate intentional maltreatment or refusal to provide care.

It is unclear from the amended complaint exactly when plaintiff received the truss and ibuprofen to treat the hernia. Plaintiff alleges a 120-day delay from diagnosis. The facts asserted indicate that he was diagnosed in July 2019 and the truss and ibuprofen were prescribed in September 2019. Regardless of whether it did actually take 120 days from diagnosis to receive these items, there is no evidence of intentional delay or maltreatment. There seems to have been some amount of delay caused by the time needed to get an appointment with a doctor and by plaintiff's transfer from SCCC to NECC. However, upon plaintiff's initial assessment at NECC with defendant Crouch – only two months after diagnosis – plaintiff was prescribed a truss and ibuprofen for pain. Although Crouch denied a lay-in restriction, it is not an unreasonable treatment plan to try using the truss and pain medication before implementing restrictions.

Approximately ten months after receiving the truss and ibuprofen prescription, plaintiff's pain medication was increased. Plaintiff alleges that defendants did not adequately manage his pain and they should have prescribed something other than ibuprofen. However, plaintiff's disagreement with medical staff's decision to offer him over-the-counter pain medications, rather than prescription medication, does not constitute deliberate indifference. *Johnson v. Leonard*, 929 F.3d 569, 576 (8th Cir. 2019).

Although plaintiff requested hernia surgery as early as August 2019 and it was not recommended by a doctor until August 2020, his "mere disagreement" with the hernia treatment plan and the denial of his requested course of treatment does not support a claim of deliberate indifference. *Cejvanovic v. Ludwick*, 923 F.3d 503, 507 (8th Cir. 2019) (stating that a "mere disagreement with treatment decisions…does not rise to the level of a constitutional violation"); *Vaughn v. Gray*, 557 F.3d 904, 909 (8th Cir. 2009) (an inmate's Eighth Amendment rights are not violated by a defendant's exercise of her professional judgment, resulting in a refusal to implement the inmate's requested course of medical treatment); *Meuir v. Greene Cty. Jail Emps.*, 487 F.3d 1115, 1118-19 (8th Cir. 2007) (stating that a "prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment" fails to rise to the level of a constitutional violation); *Dulany*, 132 F.3d at 1239 ("[I]nmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment.").

The facts alleged in the amended complaint do not demonstrate a deliberate disregard of plaintiff's medical condition or treatment. Medical defendants promptly and appropriately responded to plaintiff's medical complaints and established a progressive treatment plan. "The Constitution does not require jailers to handle every medical complaint as quickly as each inmate might wish." *Jenkins v. Cty. of Hennepin, Minn.*, 557 F.3d 628, 633 (8th Cir. 2009). In addition,

plaintiff provides no medical evidence that a delay in care caused a detrimental effect. Any alleged delay in this case was due to medical judgment, not indifference.

As to the non-medical defendants, there are no allegations of personal involvement or direct liability on the part of Meyer, Bredeman, Dr. Lovelace, or Buckner in plaintiff's medical care. As such, these defendants are all subject to dismissal. "Liability under § 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990); *see also Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (to be cognizable under § 1983, a claim must allege that the defendant was personally involved in or directly responsible for the incidents that deprived the plaintiff of his constitutional rights). In other words, "[g]overnment officials are personally liable only for their own misconduct." *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015). To that end, a plaintiff must allege facts connecting the defendant to the challenged action. *See Bitzan v. Bartruff*, 916 F.3d 716, 717 (8th Cir. 2019). It is necessary for plaintiff to provide the role of each named defendant in the case, in order that each specific defendant can know what he or she is accused of doing. *See Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (stating that the essential function of a complaint "is to give the opposing party fair notice of the nature and basis or grounds for a claim") (internal quotations and citation omitted).

Here, defendant "assume[s]" that either defendant Meyer, Bredeman, or Dr. Lovelace denied the request for him to have a hernia truss in July 2019. However, plaintiff has no proof that any of these three defendants were involved in that decision. Plaintiff's guess as to the responsible party is not sufficient to state a claim for § 1983 liability. As to defendant warden Buckner, it is not enough for plaintiff to simply allege that she oversaw the SCCC facility and had been notified of his complaints. "[A] warden's general responsibility for supervising the operations of a prison is insufficient to establish personal involvement." *Reynolds v. Dormire*,

636 F.3d 976, 981 (8th Cir. 2011) (quoting *Ouzts v. Cummins*, 825 F.2d 1276, 1277 (8th Cir. 1987) (per curiam)).  Therefore, even if plaintiff had stated a claim of deliberately indifferent medical care, plaintiff failed to allege how each non-medical defendant was personally involved in or directly responsible for any allegedly unconstitutional conduct.

For the reasons discussed above, this case will be dismissed for failure to state a claim upon which relief may be granted.  28 U.S.C. § 1915(e)(2)(B)(ii).

Accordingly,

**IT IS HEREBY ORDERED** that the Clerk shall **not** issue process or cause process to issue upon the complaint as to any defendant because the complaint fails to state a claim upon which relief can be granted.  Plaintiff's claims against defendants Ashok Chadda, Michelle Buckner, T. Bredeman, Dana Meyer, Dr. Unknown Lovelace, Dr. Jouel Stevenson, and Tamra Crouch are **DISMISSED without prejudice**.

**IT IS HEREBY CERTIFIED** that an appeal from this dismissal would not be taken in good faith.

An Order of Dismissal will accompany this Memorandum and Order.

Dated this 28th day of December, 2020.

_____
STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE