**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

AKIRA EDMONDS,                    )
                                  )
            Plaintiff,            )
                                  )
      v.                          )          No. 4:20-cv-946-SNLJ
                                  )
CORIZON, LLC, *et al.*,           )
                                  )
            Defendants.           )

## MEMORANDUM AND ORDER

Plaintiff Akira Edmonds, *pro se*, is a prisoner within the Missouri Department of Corrections ("MDOC").  He brings this lawsuit under 42 U.S.C. § 1983, alleging that defendants Corizon, LLC ("Corizon"), Dr. Ashok Chada ("Dr. Chada"), Nurse Practitioner Tamra Crouch ("NP Crouch"), and Dr. Joule Stevenson ("Dr. Stevenson") violated his Constitutional rights relating to a treatment of plaintiff's inguinal hernia between 2019 and 2021.  Numerous motions are pending before this court, including defendants' motions for summary judgment [Doc. 49]; plaintiff's surresponse to defendants' reply memorandum (which this court will also construe as a motion for leave to file a surresponse) [Doc. 59]; defendants' motion to strike plaintiff's surresponse [Doc. 60]; plaintiff's self-styled "motion to continue the case," [Doc. 56]; plaintiff's motion for documents under the Missouri Sunshine Law (which this Court will construe as a motion to compel discovery) [Doc. 55]; and plaintiff's motion to appoint counsel [Doc. 54].

## I.      Plaintiff's Motion to Continue the Case

Plaintiff's motion to continue the case [Doc. 56] appears to have been filed in response to plaintiff's own motion to hold the case in abeyance [Doc. 46].  The court denied that previous motion without prejudice.  [Doc. 47].  Having denied the abeyance motion, plaintiff's motion to continue the case is unnecessary.  Therefore, plaintiff's motion to continue the case is denied as moot.

## II.      Plaintiff's Surresponse and Defendants' Motion to Strike

Plaintiff's surresponse [Doc. 59] is styled as an amended response to defendants' memorandum in support of summary judgment [Doc. 51].  Because plaintiff's surresponse seeks to address procedural and substantive arguments identified in defendants' reply memorandum, [Doc. 57], plaintiff's surresponse will be treated as a motion seeking leave of court to file a surresponse, as required by the court's local rules.  L.R.4.01(C).  In the interests of justice and to give plaintiff the opportunity to fully litigate his case, the Court will grant plaintiff's motion to file a surresponse and accept plaintiff's surresponse. Defendants' motion to strike plaintiff's surresponse is denied [Doc. 60].

## III.      Plaintiff's Motion Under Sunshine Law

Plaintiff's sunshine request seeks information on all disciplinary actions taken against defendant Dr. Chada.  [Doc. 55, at 1].  As defendants note, Missouri's Sunshine Law only applies to public governmental bodies, which are statutorily defined.  [Doc. 58, at 1–2]; § 610.010, RSMo (defining "public governmental bodies").  Corizon—having

been formed as a limited liability company under Chapter 351, RSMo.[1]—is not included within the statutory definition for a public body; not even as a "quasi-public governmental body" under Missouri's Sunshine Act. *See* § 610.010(4)(f) (limiting "quasi-public governmental body" to corporations authorized to do business under chapters 352, 353, or 355, RSMo). Therefore, Missouri's Sunshine Law does not apply to Corizon, and so a motion under the Sunshine Law would be denied.

Construing plaintiff's motion as a motion to compel discovery—rather than as a sunshine request—plaintiff did not include in his motion a certification that he tried to confer with defense counsel regarding his discovery disputes before involving the Court. *See* Fed. R. Civ. P. 37(a)(1); E.D.Mo. L.R. 3.04(A). This Court "will not consider any motion relating to discovery and disclosure unless it contains a statement that movant's counsel has conferred in person or by telephone with the opposing counsel in good faith or has made reasonable efforts to do so, but that after sincere efforts to resolve their dispute, counsel is unable to reach an accord." E.D.Mo. L.R. 3.04(A). "Although plaintiff is incarcerated, he is still required to correspond with opposing counsel with respect to any discovery dispute before filing a motion to compel; plaintiff is also required to describe the nature of that correspondence in the motion." *Aldridge v. Hill*, No. 1:18-CV-00259-SNLJ, 2021 WL 3633682, at * 3 (E.D. Mo. Aug. 17, 2021) (citing *Davis v. Webb*, No. 4:11-cv-1906-JAR, 2013 WL 1867108, at *1 (E.D. Mo. May 2, 2013)). Plaintiff states that he

---

[1] Mo. Sec'y of State, Certificate of Conversion, File No. LC1366450, available at https://bsd.sos.mo.gov/Common/CorrespondenceItemViewHandler.ashx?IsTIFF=true&filedDocumentid=10194765&version=2.

3

"have attempt to use the Sunshine Act law to obtain this information from Corizon LLC," [Doc. 55, at 1], but this does not adequately describe the nature of that correspondence in the motion to demonstrate that plaintiff made a good faith effort to resolve this dispute before involving the Court.  *See Id.* at * 3; E.D. Mo. L.R. 3.04(A).  Therefore, plaintiff does not "state with specificity the efforts made to confer with opposing counsel."  E.D.Mo. L.R. 3.04(A).  Plaintiff's motion is denied.

## IV.    Plaintiff's Motion to Appoint Counsel

Plaintiff moves for appointment of counsel, citing his indigent status and his belief that appointed counsel would navigate federal court procedure better than he could.  "A pro se litigant has no statutory or constitutional right to have counsel appointed in a civil case." *Stevens v. Redwing*, 146 F.3d 538, 546 (8th Cir. 1998).  Several factors are considered in deciding whether to appoint counsel: these include the factual and legal complexity of the case and the plaintiff's ability to investigate and argue his claims. *McCall v. Benson*, 114 F.3d 754, 756 (8th Cir. 1997).  Plaintiff has shown that he can investigate and argue his own claims, and this case does not present complex issues of law or fact.  Plaintiff has likewise shown an ability to learn, understand, and navigate federal procedures.  Therefore, appointment of counsel is unwarranted.  Plaintiff's motion is denied.

## V.    Defendants' Motion for Summary Judgment

### A.    Factual Background

Plaintiff's complaint, [Doc. 6], alleges wrongdoing and deliberate indifference by defendants throughout the course of plaintiff's hernia treatment.  The uncontroverted facts,

4

along with plaintiff's own assertions, are as follows.  At all times relevant to plaintiff's hernia treatment, Corizon was contracted with MDOC to provide medical services to prisoners in Missouri prisons.  Plaintiff alleges that Corizon's policies and procedures caused him pain, suffering, and a delay in treatment, which violated plaintiff's Constitutional rights to be free from cruel and unusual punishment.

At all times relevant to this action, plaintiff was a prisoner of MDOC.  On July 23, 2019, while housed at South Central Correctional Center, plaintiff was diagnosed with an inguinal hernia.  A hernia is a condition involving the bulging of an organ through an abnormal opening in the body, while an inguinal hernia is a bulge that occurs in the groin region.  Surgery may be necessary to treat a hernia for patients with acute hernia incarceration or hernia strangulation, but many patients with inguinal hernias are asymptomatic or have minimal symptoms.  [Doc. 50, at ¶ 3–4].  Surgical repair of hernias is generally safe and effective, but surgery carries long-terms risks of post-surgery complications.  *Id.*, at ¶ 5.  Many hernias can be relieved through rest or by using a hernia truss—a supportive undergarment that applies gentle pressure to keep a hernia in place and to relieve symptoms. *Id.*, at ¶ 15.

On August 21, 2019, Dr. Chada renewed plaintiff's prescription for ibuprofen to treat plaintiff's complaints of pain.  On August 26, 2019, plaintiff was seen by Dr. Chada regarding plaintiff's complaints of increased hernia size and pain.  Plaintiff refused a physical examination by Dr. Chada, and Dr. Chada terminated the encounter without being able to formulate a course of treatment.  Plaintiff claims that Dr. Chada called plaintiff a fool, laughed at him, and refused to recommend hernia surgery for plaintiff.  Plaintiff

5

alleges that Dr. Chada should have provided plaintiff more medication for the pain, request surgery, or order him a hernia truss, and that his failure to do so violated plaintiff's Constitutional rights to be free from cruel and unusual punishment.

On August 27, 2019, plaintiff was transferred to Northeast Correctional Center.  On September 11, 2019, NP Crouch saw plaintiff for complaints of his hernia.  Plaintiff requested surgery.  NP Crouch examined plaintiff and did not think surgery was necessary. She ordered plaintiff a hernia truss, prescribed ibuprofen, and recommended continued monitoring and that plaintiff avoid physically strenuous activity.  Plaintiff's complaint alleges that he asked NP Crouch for a lay-in and that NP Crouch denied the lay-in, but medical records and uncontested affidavits suggest that plaintiff did not request a lay-in. On October 22, 2019, NP Crouch saw plaintiff for cardiovascular complaints, and again determined that surgery was not necessary for his hernia because there were no new clinical findings when she examined plaintiff.  On March 16, 2020, NP Crouch saw plaintiff for the final time; he did not appear to be in acute distress and expressed no hernia complaints. NP Crouch renewed his prescriptions for pain medications.  Plaintiff alleges that NP Couch denied a lay-in, ignored his complaints of severe pain, and refused to refer plaintiff for surgery, and that this violated plaintiff's Constitutional rights to be free from cruel and unusual punishment.

On July 2, 2020, Dr. Stevenson saw plaintiff for his hernia.  Plaintiff reported pain with walking and after eating, and that the hernia truss did not relieve his symptoms.  Dr. Stevenson noted that plaintiff's hernia was reducible and that there were no indications of pain with movement.  Dr. Stevenson prescribed ibuprofen and aspirin for plaintiff's pain.

He did not recommend plaintiff for surgery at this meeting.  On July 8, 2020, six days later, Dr. Stevenson requested a general surgery consultation for plaintiff's hernia.  The general surgeon recommended a laparoscopic mesh repair of plaintiff's right inguinal hernia.  Dr. Stevenson agreed and requested plaintiff's long-sought-after surgery, which was approved. Plaintiff was scheduled for surgery on September 25, 2020, but the surgery was postponed due to plaintiff's bradycardia—an unrelated condition which causes slow heart rate, which could complicate any surgery.

The next several months involved testing plaintiff for his bradycardia and plaintiff's cardiovascular issues, all the while Dr. Stevenson followed-up with plaintiff's cardiologist to see if he could be cleared for hernia surgery.  In response to recommendations by plaintiff's cardiologist, Dr. Stevenson ordered a stress test for plaintiff, which was performed on February 16, 2021.  Plaintiff was finally cleared for surgery on March 1, 2021, which was performed on April 30, 2021.   The surgery occurred without complication, plaintiff returned to the prison infirmary the same day, and he was discharged on May 3, 2021.  Plaintiff's incision sites healed, the surgeon noted no activity or lifting restrictions were necessary, and from all appearances, the surgery was successful.  Plaintiff alleges that Dr. Stevenson initially refused to refer plaintiff for hernia surgery but changed her mind and then later referred plaintiff for hernia surgery, but that this initial refusal violated plaintiff's Constitutional rights to be free from cruel and unusual punishment. Plaintiff also alleges that Dr. Stevenson's failure to prescribe pain medication other than ibuprofen violated plaintiff's Constitutional rights to be free from cruel and unusual punishment.

7

**B.     Procedural Posture**

This Court originally granted the defendants' motion to dismiss plaintiff's deliberate indifference claims for failure to state a claim.  [Doc. 8].  That decision was reversed on appeal.  *Edmonds v. Meyer*, 842 F. App'x 13 (8th Cir. 2021) [Doc. 19].  Construing the plaintiff's complaint liberally, the court of appeals found that plaintiff had stated enough facts to make out a claim for deliberate indifference as to each of the named defendants. *Id.* At the pleadings stage, the court concluded that plaintiff had stated enough facts to establish that his hernia was an objectively serious medical need. *See id.* at 14.  The court also concluded that "[a]t the pleading stage, where the . . . parties have not had the opportunity to conduct discovery, it is unknown whether the alleged failures of the medical defendants . . . rose to the level of criminal recklessness, or whether any delay had an adverse effect." *Id.* (citing *Jackson v. Riebold*, 815 F.3d 1114, 1119–20 (8th Cir. 2016)). The parties have since had the opportunity to conduct discovery and to develop material facts that were initially lacking in the pleadings stage.

**C.     Legal Standard**

Under Federal Rule of Civil Procedure 56(a), a district court may grant a motion for summary judgment if all the information before the court demonstrates that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The burden is on the moving party.  *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op. Inc.*, 838 F.2d 268, 273 (8th Cir. 1988).  After the moving party discharges this burden, the nonmoving party bears the burden of setting forth affirmative evidence and specific facts by affidavit and

other evidence showing that there is a genuine dispute of a material fact.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotex*, 477 U.S. at 324.  "A dispute about a material fact is 'genuine' only 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Herring v. Canada Life Assur. Co.,* 207 F.3d 1026, 1030 (8th Cir. 2000) (quoting *Anderson,* 477 U.S. at 248).  A party resisting summary judgment has the burden to designate the specific facts that create a triable controversy. *See Crossley v. Georgia–Pacific Corp.,* 355 F.3d 1112, 1114 (8th Cir. 2004).  Self-serving, conclusory statements without support are not sufficient to defeat summary judgment. *Armour and Co., Inc. v. Inver Grove Heights,* 2 F.3d 276, 279 (8th Cir. 1993).

In ruling on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts.  *Matsushita,* 475 U.S. at 587; *Woods v. DaimlerChrysler Corp.,* 409 F.3d 984, 990 (8th Cir. 2005).  The court is required to resolve all conflicts of evidence in favor of the nonmoving party.  *Robert Johnson Grain Co. v. Chem. Interchange Co.*, 541 F.2d 207, 210 (8th Cir. 1976).  This motion is fully briefed.  All parties have access to plaintiff's medical records and all parties have had the chance to submit affidavits.  Plaintiff has not articulated any facts indicating that further discovery is necessary to support his claim.  *See Dulany v. Carnahan*, 132 F.3d 1234, 1238 (8th Cir. 1997).  The Court determines this motion is ripe for summary judgment.

### D.   Discussion

"[M]edical treatment of prison inmates by prison physicians is state action" for purposes of a § 1983 suit.  *West v. Atkins*, 487 U.S. 42, 54 (1988).  A prisoner's Eighth

Amendment rights are violated if medical staff exhibit deliberate indifference to the prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97 (1976). To prevail, the plaintiff must demonstrate that (1) he suffered an objectively serious medical need, and (2) prison officials knew of but deliberately disregarded that need. *Hancock v. Arnott*, 39 F.4th 482, 486 (8th Cir. 2022). "A medical need is objectively serious if the medical need in question is supported by medical evidence, such as a physician's diagnosis, or is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Id.* (internal quotation marks and citation omitted). Deliberate indifference requires a showing that the official was aware of and ignored a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Where there is a serious medical need, mere medical malpractice in treating that need does not amount to a constitutional violation. *Dulany v. Carnahan*, 132 F.3d 1234, 1239, 1243 (8th Cir. 1997). Deliberate indifference may be shown by prison medical professionals failing to respond to a prisoner's serious medical needs, *Dulany*, 132 F.3d at 1239, but "[a] showing of deliberate indifference is greater than gross negligence and requires more than mere disagreement with treatment decisions." *Pietrafeso v. Lawrence Cnty., S.D.*, 452 F.3d 978, 983 (8th Cir. 2006). A prisoner alleging a delay in treatment must provide medical evidence that medical staff ignored a worsening condition that adversely affected his prognosis. *Holden v. Hirner*, 663 F.3d 336, 342 (8th Cir. 2011).

The Eighth Circuit recently clarified that a plaintiff's allegation of a serious medical need cannot be taken for granted, and that not every hernia—though a medical need—is an *objectively serious* medical need. *Hancock v. Arnott*, 39 F.4th 482. In *Hancock*, the

plaintiff was diagnosed with a reducible ventral hernia while detained at the Greene County Justice Center in Missouri. 39 F.4th at 484. The plaintiff complained of pain from his hernia and demanded immediate hernia surgery. *Id.* at 485. The attending doctor determined that the hernia did not require surgery. *Id.* Medical staff noted that the plaintiff did not appear to be in acute pain and staff used a policy of continued observation without additional treatment. *Id.* The plaintiff claimed that his hernia was a serious medical need and that defendants' treatment constituted deliberate indifference.

The court first concluded that plaintiff's reducible hernia was not a serious medical need when medical records and affidavits showed that medical staff did not think surgery was necessary, medical staff saw no objective indicators of the plaintiff's complained-of pain, the hernia was reducible, and the plaintiff offered no evidence that a delay in treatment caused him harm or changed his prognosis. *Id.* at 487 (comparing cases). The court found the plaintiff's own claims of pain insufficient to "constitute the verifying medical evidence needed to show harm from the delay" without any sort of corroborating evidence. *Id.* The court also rejected the claim that jail officials acted with deliberate indifference "merely because they did not provide [plaintiff] with hernia repair surgery." *Id.* at 488 (finding that plaintiff could not state claim for deliberate indifference when plaintiff's complaint was that he did not receive the treatment he preferred). Ultimately, *Hancock* instructs that there must still be a showing that a medical need is an objectively serious need, based on more than just plaintiff's subjective complaints of pain stemming from some condition. "To avoid summary judgment, [the plaintiff] was required to present

11

evidence to support the serious medical need he had pleaded." *Id.* at 486.  With this recent decision in mind, summary judgment as to each defendant will be discussed.

i. Dr. Chada

In his amended complaint, plaintiff alleges that he told Dr. Chada that he suffered severe pain from a hernia, that he requested surgery, and that Dr. Chada laughed at him, called him a fool, and refused to examine him.  The contemporaneous medical record and Dr. Chada's affidavit posit that it was plaintiff who was foul-mouthed, hostile, and abusive, and that plaintiff refused a physical examination that would have enabled Dr. Chada to evaluate plaintiff's condition.

Though the parties disagree over who was the rude party, that factual issue is immaterial to disposing of the motion.  Plaintiff has failed to show that his hernia was a serious medical need when he saw Dr. Chada.  Thus, there is no need to consider whether Dr. Chada's conduct constituted deliberate indifference.  *Hancock* requires that there be some factual evidence that plaintiff's hernia required surgery.  "[T]here is nothing in the record that establishes that all hernias require immediate surgery, regardless of the severity of the risk or symptoms." *Hancock*, 39 F.4th at 487.  This Court is mindful of the court of appeals earlier decision in this case, *Edmonds*, 842 Fed. App'x at 13, classifying plaintiff's hernia as an objectively serious medical need at the pleadings stage, before discovery had been conducted.  At the pleadings stage, plaintiff had alleged enough facts to establish that his hernia was a serious medical need.  *See id.* at 14.  Since that decision, the Eighth Circuit has handed down case law that this Court must incorporate in reviewing the motion for summary judgment.  Now that discovery has been conducted, and with the guidance

provided by the Eighth Circuit in *Hancock*, this Court can determine whether there is any dispute of material fact that plaintiff's reducible hernia was a serious medical need.

After examining the medical records and affidavits submitted by both parties, this Court finds the facts of this case practically indistinguishable from *Hancock*.  Like in *Hancock*, there is no evidence—outside plaintiff's own claims—to suggest that plaintiff's reducible hernia was a serious medical need at the time he was treated by Dr. Chada. Though Dr. Chada did not perform a physical examination on plaintiff because plaintiff refused an examination, plaintiff was seen by another medical professional shortly thereafter.  When plaintiff was examined by NP Crouch a few weeks later, plaintiff reported no restrictions or limitations on daily living.  NP Crouch did not note any signs of pain during her examination.  The only evidence plaintiff offers as to prove that he suffered from a serious medical condition is the fact that he had a hernia and his self-reported pain levels, but without corroborating medical evidence of symptoms, "self-reported assertions of pain are insufficient to survive summary judgment." *Hancock*, 39 F.4th at 487 (citing *Holden v. Hirner*, 663 F.3d 336, 342–43 (8th Cir. 2011)).  Evidence suggests that plaintiff's condition was the same at the time of seeing Dr. Chada only a few weeks before.

Furthermore, Dr. Chada's uncontroverted affidavit recognizes that "[s]urgery may be necessary for patients with acute hernia incarceration or hernia strangulation" but that "many patients with inguinal hernia are asymptomatic or have minimal symptoms." [Doc. 50, Ex. B, at ¶ 5]. None of plaintiff's medical records suggests that plaintiff was suffering from hernia incarceration or hernia strangulation.  The uncontroverted affidavits also establish that "a strategy of watchful waiting is a safe and acceptable option . . . for patients

with . . . minimally symptomatic inguinal hernias." *Id.* Even though surgical repair may have been the only way to permanently treat the hernia, as the Eighth Circuit recognized in *Hancock*, not every hernia is *per se* a serious medical need by that fact alone.

Indeed, evidence in the record shows that the medical staff—including Dr. Chada—considered the need for surgery and rejected it because the long-term risks from surgery outweighed the need to treat plaintiff's reducible hernia, especially where plaintiff showed no objective signs of pain or acute distress. [Doc. 50, Ex. A, at ¶ 6; Ex. B, at ¶ 5; Ex. C, at ¶¶ 9, 10]. To rebut this demonstration that surgery is not immediately necessary for every hernia, plaintiff attached to his surresponse as "Exhibit A" what appears to be a printout providing information about hernias. [Doc. 59, at 6] (emphasizing "the ONLY CURE IS SURGERY.") (all-caps in original). Plaintiff has not laid a proper foundation to admit this evidence as expert medical evidence. *See* Fed. R. Evid. 702; Fed. R. Evid. 803(18)(B). Even if such evidence were admissible, and even if surgery were the only way to permanently fix his hernia, that does not show plaintiff's hernia, at the time of being treated by Dr. Chada, was a serious medical need. *See Hancock*, 39 F.4th at 487. Time and time again, plaintiff's providers noted no acute signs of distress or objective indications of pain. Thus, nothing outside of plaintiff's own complaints establishes that plaintiff's hernia was a serious medical need, and plaintiff's complaints alone are insufficient to establish his hernia as a serious medical need, per the Eighth Circuit decision in *Hancock*. 39 F.4th at 487.

Even though plaintiff suggests he suffered permanent damage because of the delay in treatment, [Doc. 53, at 6], plaintiff has not presented any medical or expert evidence to

show that there was any detrimental effect due to the delay in treating his hernia, nor has plaintiff even testified to what damage he suffered. *Hancock*, 39 F.4th at 487 ("Because [plaintiff] has not presented any evidence that the delay caused him harm or changed his prognosis, we conclude that [plaintiff] has not shown a serious medical need requiring immediate surgery."). Indeed, plaintiff has enjoyed a successful surgery and a full and complete recovery. [Doc. 50, Ex. A, at ¶¶ 27, 29; Ex. A-1, at 362, 369 437–38] (detailing plaintiff's successful surgery and recovery). Thus, plaintiff has failed to provide any evidence that rebuts defendants' showing that plaintiff's hernia was not a serious medical need when he was examined by Dr. Chada. "To avoid summary judgment, [plaintiff is] required to present evidence to support the serious medical need he had pleaded. He did not do so." Hancock, 39 F.4th at 486. Having failed to prove the first element of a deliberate indifference claim, his claim fails.

Even if plaintiff's hernia was a serious medical need, there is no evidence to suggest that Dr. Chada's treatment constituted deliberate indifference. Dr. Chada claims that plaintiff refused to allow Dr. Chada to perform a physical examination. Plaintiff claims that he wanted treatment and that he was denied treatment, and he points to the fact that Dr. Chada terminated the encounter as evidence that he was not treated. But Dr. Chada agrees that plaintiff demanded a particular course of treatment—surgery. The parties agree on that point. Instead, Dr. Chada states that plaintiff would not submit to the necessary physical examination that would have allowed him to evaluate whether surgery was a necessary treatment. [Doc. 50, Ex. A-1, at 38; Doc. 50, Ex. B, at ¶ 8]. Plaintiff does not rebut or deny the evidence that he refused to submit to a physical examination. Instead,

plaintiff merely denies that he refused medical treatment or that he was hostile to Dr. Chada. [Doc. 53, at 4].

Plaintiff references—without providing any evidence or documentation—that prison policy requires that a prisoner must fill out a "medical refusal form" [Doc. 53, at 4] before medical staff can accept a patient's refusal of treatment.  But the parties do not dispute the plaintiff's desire for treatment.  The parties agree that plaintiff wanted treatment, but only if it was his preferred course of treatment: surgery.  Even though Dr. Chada did not give plaintiff his preferred treatment, "[a] prison doctor is not liable merely because he did not implement the inmate's preferred treatment." *Hancock*, 39 F.4th at 488.

Plaintiff does not deny the statements in Dr. Chada's affidavit and the medical records, which state that plaintiff was the one to refuse a physical examination. [Doc. 50, Ex. A-1, at 38; Doc. 50, Ex. B, at ¶ 8].  Indeed, the whole point of the physical examination—according to the medical records—was to confirm the herniation so that Dr. Chada could evaluate the need for surgery.  [Doc. 50, Ex. A-1, at 38].  The Court need not resolve who may have insulted whom, nor is that issue material for ruling on the motion. Having refused a physical examination, plaintiff cannot then complain that Dr. Chada terminated the encounter.  Dr. Chada also addressed plaintiff's reported levels of pain: he refilled plaintiff's aspirin prescription mere days before the encounter.  Even viewing the facts in a light most favorable to plaintiff, plaintiff cannot show that Dr. Chada was deliberately indifferent to plaintiff's condition.  Dr. Chada provided all the care he could when plaintiff refused a physical examination that would have enabled Dr. Chada to

16

confirm plaintiff's herniation.  Again, plaintiff does not rebut Dr. Chada's evidence that plaintiff refused a physical examination.  [Doc. 50, Ex. A-1, at 38].

Plaintiff's final allegation in his response memorandum is that Dr. Chada did not follow Corizon's policies in treating plaintiff, and that this amounted to deliberate indifference.  [Doc. 53, at 4].  Yet, plaintiff fails to specify which Corizon policies Dr. Chada allegedly ignored and fails to explain how the non-compliance with Corizon policies amounted to deliberate indifference.  *See Lucket v. Dodge County*, 684 F.3d 808, 819 (8th Cir. 2012) ("Failure to follow written procedures does not constitute per se deliberate indifference.").  Thus, plaintiff's unsupported allegations are not enough to defeat summary judgment.  Dr. Chada's motion for summary judgment is granted.

ii.  NP Crouch

As noted above, there is no evidence to suggest that plaintiff's medical condition was a serious medical need when he saw NP Crouch.  *See Hancock*, 39 F.4th at 487. Plaintiff displayed no acute symptoms of distress, while physical examinations revealed no symptoms of pain.  Uncontroverted evidence shows that many reducible hernias can be managed without surgery, and that plaintiff could engage in normal activities.  Indeed, months later, plaintiff was still self-reporting a "high exercise lifestyle," which indicates that plaintiff could function normally and engage in regular physical activity.  [Doc. 50, Ex. A-1, at 100]; *Hancock*, 39 F.4th at 487 ("Medical staff never observed changes to Hancock's vitals or other objective indications of severe pain, and he was observed engaging in physical activity without difficulty.").  Thus, the evidence supports the conclusion that the hernia was not a serious medical need when he saw NP Crouch.

17

Even assuming that his hernia was a serious medical need, plaintiff has likewise failed to demonstrate that NP Crouch was deliberately indifferent to his treatment.  NP Crouch saw plaintiff several times and each time prescribed the treatment she thought was medically necessary.  She would renew his prescriptions for ibuprofen and even ordered plaintiff a truss, a medical device she thought would provide plaintiff relief without the long-term risks stemming from surgery.  Plaintiff's only rebuttal is that he should have been given surgery.  But a plaintiff cannot demonstrate deliberate indifference merely by desiring a different treatment than what was prescribed.  Even if NP Crouch committed malpractice by not referring plaintiff for surgery, such malpractice does not rise to the level of deliberate indifference.

There is a dispute over whether NP Crouch should have ordered a lay-in for plaintiff and to limit how much plaintiff should stand, lift, move, or work.  NP Crouch claims that she was unaware of any physical limitations on plaintiff or of any strenuous activity plaintiff was required to perform.  The medical records stemming from this encounter indicate that NP Crouch instructed plaintiff to avoid strenuous activity, and the record is silent on whether plaintiff requested a lay-in.  [Doc. 59, Ex. A-1, at 42–43].  In his response memorandum, plaintiff does not claim that he requested a lay-in as he did in his amended complaint, but instead claims that it was NP Crouch's responsibility to order a lay-in "as a matter of medical practices."  [Doc. 53, at 5].  Regardless of whether it was NP Crouch's responsibility to order a lay-in, plaintiff has failed to articulate facts showing how he was harmed by the lack of the lay-in, or that he could not get out of physical activity without one.  Indeed, plaintiff suggests he was the one to maintain his own "high exercise lifestyle,"

18

which indicates he could still engage in physical activity.  Even if it were incumbent on NP Crouch to prescribe a lay-in, plaintiff has presented no evidence to show how he was harmed by this failure, or that such failure constituted deliberate indifference.  Again, the facts indicate that, at worst, this failure was mere negligence, which is not enough to sustain a claim for deliberate indifference.  *See Johnson*, 452 F.3d at 972–73 (finding no deliberate indifference and only mere malpractice when fractured finger was only initially treated with ibuprofen and followed by a delay of one month to get his finger seen by a doctor and x-rayed).

Thus, the uncontroverted facts show both that plaintiff did not have a serious medical need and that NP Crouch was not deliberately indifferent to plaintiff's condition. Therefore, NP Crouch's motion for summary judgment is granted.

### iii.  Dr. Stevenson

As explained, plaintiff's hernia was not a serious medical need for much of the complained-of timeframe.  Perhaps, by the time of plaintiff's first encounter with Dr. Stevenson on July 2, 2020, plaintiff's hernia evolved into a serious medical need: plaintiff reported higher pain levels not managed by medication, his hernia had grown, and plaintiff reported that the hernia truss had not reduced symptoms.  Even assuming that plaintiff's hernia was a serious medical need by the time he was in the care of Dr. Stevenson, plaintiff has totally failed to respond with any evidence indicating that Dr. Stevenson was deliberately indifferent to that medical need.

The uncontroverted evidence shows that Dr. Stevenson requested a surgical consultation for plaintiff's hernia after his first visit with her.  After that consultation, Dr.

Stevenson requested hernia surgery for plaintiff. A surgery was scheduled shortly thereafter, but the surgery was postponed due to plaintiff's low heart rate stemming from his bradycardia. Dr. Stevenson requested the cardiac tests to clear plaintiff for surgery, and that surgery was performed on April 30, 2021. Dr. Stevenson also put on evidence in medical records and affidavits showing that her treatment of plaintiff's pain was within the standard of care and was adequate to address plaintiff's level of pain, even if plaintiff desired a different treatment. *See Hancock*, 39 F.4th at 488.

Plaintiff makes no reference to Dr. Stevenson in either his response or surresponse memorandums, nor does plaintiff identify any conduct of Dr. Stevenson that amounts to deliberate indifference. Thus, plaintiff has failed to demonstrate any issue of material fact to survive summary judgment. Dr. Stevenson's motion for summary judgment is granted.

iv.  Corizon

To support a claim against Corizon, plaintiff "must show there was a policy, custom, or official action that inflicted an actionable injury." *Johnson v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006) (citing *Sanders v. Sears Roebuck & Co.*, 984 F.2d 975–76 (8th Cir. 1993). The facts show that Corizon previously used a policy of evaluating hernias "on an individual basis," and hernia surgery was provided "based on that individual's objective presentation, his subjective complaints, and a provider's medical judgment." [Doc. 50, at ¶ 16]. Eventually, Corizon changed its policy to provide hernia surgeries for patients that requested surgery. Even though Corizon's previous policy did not provide surgery on-demand, plaintiff has failed to demonstrate how this previous policy amounted to deliberate indifference or how it impacted his prognosis. Plaintiff supports his allegations with, what

appear to be, multiple email printouts notifying prisoners about this change in Corizon policies.  [Doc. 59, at 7–14, Ex. B–I].  The admissibility of these printouts is questionable, both on foundational grounds and for their contents.  Fed. R. Evid. 407 (barring the use of subsequent remedial measures as evidence of negligence).  Even if admissible, these printouts do not show how Corizon ignored an acute or escalating situation that adversely affected plaintiff's outcome.  *See Holden*, 663 F.3d at 342.

As stated above, plaintiff has not presented evidence indicating that his hernia was a serious medical need, nor that he was harmed by any delay in treating his hernia—the affidavits and medical records indicate that plaintiff was not showing any objective symptoms of pain and was functioning normally, even by the time he was referred for surgery.  There is nothing to suggest that plaintiff's prognosis was worsened by any delay in treatment stemming from this "individual basis" for a course of treatment.  As the facts indicate, plaintiff had a successful surgery and recovery.  [Doc. 50, Ex. A, at ¶¶ 27, 29; Ex. A-1, at 362, 369 437–38].  The only evidence to the contrary is plaintiff's self-serving statements about his levels of pain before surgery, without medical corroboration, which are not enough to survive summary judgment.  *Hancock*, 39 F.4th at 487 (citing *Holden*, 663 F.3d at 342–43).

At the pleading stage, plaintiff had pled enough to sustain a claim for deliberate indifference, *Edmonds*, 842 Fed. App'x at 14, but plaintiff has since failed to offer any evidence that defendants' treatments amounted to deliberate indifference. Voluminous medical records show that plaintiff was seen and treated by several medical professionals throughout the treatment of his hernia.  The record shows that defendants were not

21

indifferent to plaintiff's complaints about his plain or his need for more and more treatment. Plaintiff was seen by medical staff at least 22 times between his hernia diagnosis and the completion of his surgery, for a variety of health conditions, and plaintiff received countless medical tests to prepare him for surgery.  *See Hancock*, 39 F.4th at 488 (finding no deliberate indifference where plaintiff "was seen by the jail physician or nurses more than thirty times and made only intermittent complaints related to his hernia").  Plaintiff was routinely prescribed ibuprofen and aspirin for pain treatment, which medical staff believed to be an appropriate prescription.  Even if those prescriptions were ill-suited to treat plaintiff's pain levels—which is doubtful, because the medical records indicate that plaintiff did not display objective signs of pain—those prescriptions would only amount to malpractice at most.

At all times, plaintiff was recommended a course of care that was based upon the medical judgment of those medical professionals.  Even though plaintiff did not receive surgery as soon as he would have liked, Corizon is not liable merely because it did not give plaintiff his preferred treatment.  *See Hancock*, 39 F.4th at 488.  As plaintiff's complaints mounted, so did the level of treatment—with medical staff providing more prescriptions for aspirin, ibuprofen, and ordering a hernia truss—until medical staff scheduled the surgery.

Plaintiff eventually got the surgery he requested, and any delay between Dr. Stevenson's request for surgery and the performance of the surgery is explained by the need to make sure that plaintiff was physically capable for surgery.  *See Johnson*, 452 F.3d at 972–73 (finding no deliberate indifference against provider when the plaintiff could not

22

point to any policy that caused a delay of a month between diagnosis of the plaintiff's fractured finger and the date that the plaintiff's x-ray of the fractured finger was performed).   Since the surgery, plaintiff has continued to receive follow-ups and appropriate medical treatment to make sure that he is healing.  The facts do not show that Corizon was deliberately indifferent to plaintiff's hernia or his pain levels.  Instead, medical staff exercised their medical judgment to provide the appropriate treatment they deemed necessary.

Based on the successful outcome, plaintiff has failed to articulate how Corizon's policies impacted his prognosis or caused any harm from a delay.  *See Moots v. Lombardi*, 453 F.3d 1020, 1023 (8th Cir. 1997) (citing *Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997) (noting that a plaintiff must show verifying medical evidence that a delay in treatment had detrimental effect).  As stated, plaintiff's self-serving complaints of pain in suffering in-between his waiting for surgery are not supported by the medical evidence, and they are not enough to establish a dispute of material fact to survive summary judgment.  "When there is evidence 'that the care provided was adequate, an inmate cannot create a question of fact by merely stating that [he] did not feel [he] received adequate treatment.'" *Hancock*, 39 F.4th at 488 (quoting *Dulany*, 132 F.3d at 1240); *see also Johnson*, 452 F.3d at 972–73 (finding no deliberate indifference against and only mere malpractice where fractured finger was only initially treated with ibuprofen).

Finally, plaintiff makes a new claim in his memorandum that MDOC transferred him to a different prison because the MDOC was retaliating against him for being a "problem inmate[]." [Doc. 53, at 3, 6].  Plaintiff alleges that Corizon was somehow behind

the transfer.  [Doc. 53, at 2].  Plaintiff cannot add a new claim for retaliation in his brief opposing summary judgment.  *See N. States Power Co. v. Fed. Transit Admin.*, 358 F.3d 1050, 1057 (8th Cir. 2004) ("[W]hile we recognize that the pleading requirements under the Federal Rules are relatively permissive, they do not entitle parties to manufacture claims, which were not pled, late into the litigation for the purpose of avoiding summary judgment.").  Regardless, plaintiff fails to make any showing how Corizon was responsible for a transfer conducted by MDOC.  Therefore, the Court will not consider this claim.

To avoid summary judgment, plaintiff must produce evidence "such that a reasonable jury could return a verdict" for him.  *Reed v. City of St. Charles, Mo.*, 561 F.3d 788, 791 (8th Cir. 2009) (citations omitted).  Plaintiff has produced no such evidence.  For all defendants, plaintiff's only responses are conclusory claims that defendants ignored his pain and that hernia surgery should have been prescribed sooner, all without any corroborative evidence.   Because plaintiff has failed to show any dispute of facts that would indicate Corizon—or any defendant—was deliberately indifferent to a serious medical need of plaintiff, Corizon's motion for summary judgment is granted.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to continue the case [Doc. 56] is DENIED as moot.

**IT IS FURTHER ORDERED** that plaintiff's motion to file a surresponse [Doc. 59] is GRANTED, and defendants' motion to strike plaintiff's surresponse [Doc. 60] is DENIED.

**IT IS FURTHER ORDERED** that plaintiff's motion under Missouri's Sunshine Law or, in the alternative, to compel discovery [Doc. 55] is DENIED.

**IT IS FURTHER ORDERED** that plaintiff's motion to appoint counsel [Doc. 54] is DENIED.

**IT IS FINALLY ORDERED** that defendants' motion for summary judgment [Doc. 49] is GRANTED as to each defendant.

Dated this 17th day of August, 2022.

_____
STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE